UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
COURT FILE NO.: 09–cv–12996–SFC–PJK

| | |
|---|---|
| **JESSICA WILSON**<br><br>   **Plaintiff,**<br>**v.**<br><br>**MERCHANTS AND MEDICAL CREDIT CORP, JANE DOE, and MR. SHAW, Individually and Jointly,**<br><br>   **Defendants.** | **Hon. Sean F. Cox**<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS, COMPEL DEPOSITION AND TO DEEM REQUESTS FOR ADMISSIONS AS ADMITTED** |

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES………………………………………………………………. ii

STATEMENT OF FACTS……………………………………….…………………………… 1

STANDARD OF REVIEW……………………………………………………………………1

ARGUMENT ..................................................................................................................... 3

RELIEF REQUESTED……………..…………………………………………………….5

i

# INDEX OF AUTHORITIES

Federal Cases

Campbell v. Spectrum Automation Co., 601 F.2d 246, 253 (6th Cir. 1979)     4

Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 944-45 (7th Cir. 1999)     3

Heller Financial Inc. v. Pandhi, 888 F.2d 1391 (6th Cir. 1989)     4

In re Agent Orange Product Liability Litig., 821 F.2d 139, 145-46 (2d Cir. 1987)     3

In Re Huff, 124 F.3d 197 (6th Cir. 1997)     4

Kerry Steel, Inc. v. Paragon Industries, 103 F.3d 147, 153 (6th Cir. 1997)     4

Lovejoy v. Owens, 86 F.3d 1156 (6th Cir. 1996)     4

Price v. Total Building Services, Inc., 100 F.3d 957 (6th Cir. 1996)     4

Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988)     3

San Jose Mercury News, Inc. v. U.S. District Court - Northern District, 187 F.3d 1096 (9th Cir. 1999)     2

Tracy v. Heffron, 822 F.2d 60 (6th Cir. 1987)     4

Federal Rules

FRCP 36(a)(3)     4

FRCP 36(b)     4

FRCP 37     3

Fed.R.Civ.P.30(b)(6)     1

**Statement of Facts**

Defendants were served Plaintiff's Discovery and Requests for Admissions on October 13, 2009.  Defendants were also served on October 13, 2009, Plaintiff's Notice of Taking Deposition Duces Tecum of Defendants Designated Representative Pursuant to Fed.R.Civ.P.30(b)(6) by Stenographer and/or Video Tape.  Defendant requested and was given an extension of time in which to respond to Plaintiff's Discovery and Request for Admissions. No written responses have been provided as of today's date. Three days before the scheduled 30(b)(6) deposition, Defendant objected via email to items 1,2,3,4 and 6 contained in Plaintiff's Notice of 30(b)(6) deposition Duces Tecum. (See Exhibit 7 - Email correspondence from defense counsel dated December 16, 2009) The items Defendant objects to producing include its FDCPA training materials of its employees and the personnel files of the defendant employee who, amongst other things, threatened the plaintiff with arrest and imprisonment if she did not "pay $200.00 by the end of the day".  Notably, the defendant has not objected nor otherwise responded to Plaintiff's discovery requests which served October 13, 2009.

On December 21, 2009, Defendant's 30(b)(6) witness arrived on the date and time of the scheduled deposition without the requested documents.  Plaintiff counsel again requested the FDCPA training materials and personnel file to which the defendant refused re-stating its objection.

**Argument**

**Unanswered Discovery Requests**

As Plaintiff understands it, Defendant argues against disclosure of the requested materials on the basis that the materials are not relevant, they contain proprietary information and it is unduly burdensome for them to produce.

It is difficult for the Plaintiff to conceive of materials more germane to its case and to that of defendant's affirmative defense that it complied with the FDCPA than the training manuals and the individual collector personnel file. The training manual is the debt collector's "Bible," describing the tactics and strategies involved in getting consumers to pay them. If this manual does not instruct the defendants to strictly comply with all provisions of the FDCPA, then any discrepancies will assist the plaintiff in making out their prima facie case as well as refuting affirmative defenses. Also relevant and probative will be the personnel file of the collector involved. This file will typically keep a record of the employee's prior and subsequent FDCPA violations, back ground information, criminal checks, testing on FDCPA comprehension and more. Certainly whether or not the defendant has taken the time to check out the criminal back ground of its employee (a party defendant in this case) is relevant to its concern that its employees are law abiding citizens who will take the consumer protections set forth in the FDCPA seriously and comply.

It cannot be fairly argued that the cost or burden of producing this information is prohibitive in a day and age when technology allows the printing of this information within a few key strokes by the human resources department officer.

Similarly, the propriety of trade secrets is not an issue and if it were, than the proper response would be to work out a stipulated protective order. Plaintiff is willing to discuss and limit disclosure of defendant's employee personnel files and other proprietary materials worthy of protection. As stated on this Court's scheduling order, protective orders "shall not be entered routinely." This Court is aware that it is well established that the fruits of discovery are presumptively public.  See *San Jose Mercury News, Inc. v. U.S. District Court – Northern District*, 187 F.3d 1096 (9th Cir. 1999) (citing *Citizens First Nat'l Bank v. Cincinnati Ins. Co.,*

178 F.3d 943, 944-45 (7th Cir. 1999); *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 789 (1st Cir. 1988); *In re Agent Orange Product Liability Litig.,* 821 F.2d 139, 145-46 (2d Cir. 1987)).  Federal Courts of Appeals have explained, "[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."  *Citizens First Nat'l Bank,* 178 F.3d at 944-45.  Therefore, protective orders should not be granted without review or carte blanche.  *See Id.*

FRCP Rule 37 provides that a party may apply for an order compelling disclosure or discovery. Plaintiff's attorney has conferred with Defendant in an attempt to secure disclosure without court action.  However, Defendant has failed and/or refused to provide the requested discovery. The Rule also provides that if the motion is granted or the requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion to pay the moving party reasonable expenses incurred in making the motion, including attorney fees.

**Requests to Admit**

Defendant, Merchants & Medical has failed to timely serve responses to the Plaintiff's requests for admission within the allotted time.  Plaintiff contacted Defendant through its counsel on numerous occasions requesting that Defendant  respond to its discovery requests.  Defendant ignored Plaintiff's requests and has still not served its responses which were originally due on November 12, 2009

Plaintiff now brings this motion to deem the requests admitted in accordance with the Federal Rules of Civil Procedure.

**The tardy responses to Plaintiff's Requests for Admissions are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3).**

FRCP 36(a)(3) provides: "A matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves upon the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Accordingly, if a party fails to respond timely to a request for admission, the request is admitted. A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. FRCP 36(b). The Sixth Circuit has stated, under Rule 36(b), a request for admissions which is not responded to within the applicable time period is conclusively established unless the court on motion permits withdrawal or amendment of the admission. *Kerry Steel, Inc. v. Paragon Industries*, 103 F.3d 147, 153 (6th Cir. 1997). Rule 36(a) allows a party to request an admission of ultimate facts or which are dispositive of the entire case. *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979). The court has the discretion to rely on default admissions that resolve the underlying claims, especially where Defendants have not moved to withdraw or amend their admissions. See *In Re Huff*, 124 F.3d 197 (6th Cir. 1997); *Lovejoy v. Owens*, 86 F.3d 1156 (6th Cir. 1996); *Price v. Total Building Services, Inc.*, 100 F.3d 957 (6th Cir. 1996); *Heller Financial Inc. v. Pandhi*, 888 F.2d 1391 (6th Cir. 1989); *Tracy v. Heffron*, 822 F.2d 60 (6th Cir. 1987).

Defendants' dilatory tactics have hampered Plaintiff in her attempt to obtain discovery through all allowable channels. Plaintiff has timely served all discovery requests in this case, including the requests for admission, in an effort to solidify her case within the terms of this Court's scheduling order. Defendants have delayed in responding to discovery requests and in the case of the requests for admission, delayed over forty five (45) days in providing any response to Plaintiff.

Defendants' actions in delaying response to the requests for admission are the exact type of action sought to be deterred by the terms of Rule 36(b). Defendants sought and were given an extension of time to respond to the requests for admission. Defendants have not moved this Court for any relief from the automatic operation of Rule 36(b). The case law in this circuit is very clear that the result of Defendants' failure to respond to the admission requests is that those matters are deemed admitted for all purposes in this case. To allow any other result, would be encouraging this Defendant continue its dilatory and unresponsive ways, which have been pervasive in this case.

## <u>Relief Requested</u>

**WHEREFORE**, Plaintiff requests this Honorable Court enter an order deeming the unanswered requests for admission to Defendants Merchants & Medical and John Doe admitted for all purposes of proof in this matter, award Plaintiff her attorney fees incurred in being required to file the instant motion, and for all other relief this Court deems just and equitable.

Respectfully submitted,

Dated: December 31, 2009

____/s/ Rex C. Anderson_
Rex C. Anderson
Attorney for Plaintiff
9459 Lapeer Rd., Suite 101
Davison, MI 48423
(810) 653-3300
(866) 813-4195
rex@rexandersonpc.com

187 F3d 1096 San Jose Mercury News v. US District Court -- Northern District Lora Saldivar

187 F.3d 1096 (9th Cir. 1999)

**SAN JOSE MERCURY NEWS, INC.,Petitioner,**

**v.**

**U.S. DISTRICT COURT -- NORTHERN DISTRICT (SAN JOSE),Respondent, LORA SALDIVAR; SHANNON CALBY; CITY OF MOUNTAIN VIEW,Real Parties in Interest.**

*No. 99-70062*

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*Argued and Submitted July 16, 1999--*

*Filed August 13, 1999*

Edward P. Davis, Jr., Gray, Cary, Ware & Friedenrich, Palo Alto, California, for the petitioner.

Gregory E. Stubbs and H. Christopher Hittig, Stubbs, Hittig & Leone, San Francisco, California, for the City of Mountain View, real party in interest.

Vanessa A. Zecher, San Jose, California, for Lora Saldivar and Shannon Calby, real parties in interest.

Petition for Writ of Mandamus to Review an Order Entered by the United States District Court for the Northern District of California James Ware, District Judge, Presiding. D.C. No. CV-96-20718-JW.

Before: Mary M. Schroeder, Betty B. Fletcher, andCynthia Holcomb Hall, Circuit Judges.

OPINION

B. FLETCHER, Circuit Judge:

1

The San Jose Mercury News, Inc. ("Mercury News") petitions for mandamus in an effort to gain access to an investigatory report commissioned by the City of Mountain View ("Mountain View") in connection with a sexual harassment suit brought by two female police officers ("Plaintiffs") against Mountain View and its police department ("Defendants"). In order to obtain the report, the Mercury News sought permissive intervention in the action before the district court. The district court denied the motion, prompting the newspaper's petition for mandamus relief. We grant the writ, vacate the

district court's order denying the Mercury News' motion to intervene, and remand for further proceedings.

I.

2

The relevant facts are undisputed. In early 1996, the Plaintiffs filed discrimination charges with the EEOC against the Defendants. After receiving "right to sue" letters from the EEOC, the Plaintiffs filed the underlying suits alleging, among other things, that the Mountain View Police Department maintained a work environment hostile to its female employees in violation of state and federal law.

3

In response to the discrimination charges, the Defendants retained an independent expert, Geraldine Randall, to investigate the allegations and produce a report detailing her findings ("Report"). During discovery, the Plaintiffs sought production of the Report. This set off an extended series of discovery disputes between the parties, spanning almost six months. In the end, the Defendants lost the fight -- the district court ordered the Report produced. The parties, however, stipulated to a protective order that kept the Report from becoming public.[1] The district court entered the protective order on February 18, 1998.

4

Mercury News coverage of the discrimination suit apparently began in January 1998, with a story detailing the Plaintiffs' allegations and the Defendants' efforts to withhold the Report. On May 14, 1998, the Mercury News filed a motion seeking permissive intervention and an order modifying the protective order so as to unseal the Report. The district court denied the motion on July 27, 1998, holding that neither the First Amendment nor federal common law provides a right of public access to court records in civil cases prior to final judgment. On January 22, 1999, the Mercury News filed the instant petition for mandamus relief, invoking our jurisdiction pursuant to the All Writs Act, 28 U.S.C. S 1651.

II.

5

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402 (1976); Calderon v. United States District Court, 134 F.3d 981, 983 (9th Cir.) (quoting Kerr), cert. denied sub nom. Calderon v. Taylor, 119 S. Ct. 274 (1998).

This court has recognized five factors, commonly known as the "Bauman factors," that are the analytic starting point in determining whether mandamus should issue: (1) whether the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or issues of law of first impression. See Phoenix Newspapers v. United States District Court, 156 F.3d 940, 951-52 (9th Cir. 1998); Bauman v. United States , 557 F.2d 650, 654-55 (9th Cir. 1977). A petitioner need not satisfy all five factors. "The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators." Bauman, 557 F.2d at 655. Mandamus review is at bottom discretionary -- even where the Bauman factors are satisfied, the court may deny the petition. See Kerr, 426 U.S. at 403; Phoenix Newspapers, 156 F.3d at 952.

6

The Mercury News contends that mandamus relief is appropriate because the district court's denial of the motion to intervene was based on an erroneous legal principle -- that the public has no right of access to court records in civil cases before judgment. We agree, concluding that a right of access to such records can be derived from at least two independent sources: the federal common law and the Federal Rules of Civil Procedure. This legal conclusion notwithstanding, we must evaluate whether, in light of the Bauman factors, mandamus relief is warranted.

A.

7

With respect to the first Bauman factor -- the availability of alternate avenues of relief -- we note that a direct appeal was available to the Mercury News here. The precedents of this court make it clear that a denial of a motion for permissive intervention in a civil case is directly appealable. See League of United Latin Amer. Citizens v. Wilson, 131 F.3d 1297, 1307-08 (9th Cir. 1997); see generally 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE S 1923 (2d ed. 1986) (recognizing this as the general rule). As a general matter, "[m]andamus is not to be used as a substitute for an appeal." Calderon v. United States District Court, 137 F.3d 1420, 1421 (9th Cir. 1998); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 8 n.6 (1983).

8

Here, however, the second Bauman factor offsets the first to some degree. Because of the perishable nature of news, a direct appeal might not be an entirely adequate remedy here. In cases involving a request by the press for access to judicial records, this court has recognized that the delay entailed by a direct appeal can constitute an irreparable injury. See Valley Broadcasting Co. v. United States District Court, 798 F.2d 1289, 1292 (9th Cir. 1986) ("[Petitioner] cannot attain the requested relief because the tapes it seeks to copy will lose much of their newsworthiness during the pendency of the trial."). At the same time, we are troubled by the fact that the Mercury News waited almost six months to bring this petition for mandamus.[2] Nevertheless, the Mercury News'willingness to seek the writ, even if belatedly, suggests that the case was once again "newsworthy" in January 1999. To the extent this is true, the decay of newsworthiness would constitute an injury better addressed by a writ of mandamus than by a direct appeal.

9

Accordingly, we find that the first Bauman factors tips against mandamus relief, while the second tips in favor.

B.

10

As a general matter, the third Bauman factor demands that a petitioner seeking mandamus relief show that "the district court's order is clearly erroneous as a matter of law." See Calderon v. United States District Court, 134 F.3d at 983. Where a petition for mandamus raises an important issue of first impression, however, a petitioner need show only "ordinary (as opposed to clear) error." Id. at 984. The instant case raises an important issue of first impression -- whether the public has a pre-judgment right of access to judicial records in civil cases -- and we conclude that the district court erred in resolving it.

11

Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2). See, e.g., EEOC v. National Children's Ctr., 146

12

F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases); Hagestad v. Tragesser, 49 F.3d 1430, 1432 (9th Cir. 1995) (permissive intervention granted to nonparty pressing federal common law right of access); Beckman Indus. v. International Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (approving

permissive intervention as method for challenging protective order under Rule 26(c)); Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 657 (3d Cir. 1991) (permissive intervention granted to nonparty newspaper pressing both First Amendment and common law right of access). A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court. See League of United Latin Amer. Citizens, 131 F.3d at 1307; Beckman, 966 F.2d at 472. Where, as here, the district court's decision turns on a legal question, however, its underlying legal determination is subject to de novo review. See Beckman, 966 F.2d at 472; accord Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3d Cir. 1994).

13

In this circuit, there are three necessary prerequisites for allowing permissive intervention pursuant to Rule 24(b)(2): "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." League of United Latin Amer. Citizens, 131 F.3d at 1308. Here, the Defendants do not challenge the first or third of these prerequisites. See Beckman, 966 F.2d at 473-74 (holding that independent jurisdictional basis and strong nexus of fact or law are not required where intervenor merely seeks to challenge a protective order). The Defendants do, however, argue that the Mercury News' motion was untimely, and that the district court thus did not abuse its discretion in denying it.

1.

14

Generally, a district court's determination of timeliness in connection with a motion to intervene pursuant to Rule 24(b)(2) is reviewed for an abuse of discretion. See League of United Latin Amer. Citizens, 131 F.3d at 1302. Here, however, the district court did not expressly base its decision on timeliness grounds and did not make any factual findings regarding timeliness. As a result, we review de novo. See id.

15

In determining whether a motion for intervention is timely, a court must consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." Id. In measuring any delay in seeking intervention, the inquiry looks to when the intervenor first became aware that its interests would no

longer be adequately protected by the parties. See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 785 (1st Cir. 1988).

16

   Here, until the filing of the stipulated protective order on February 18, 1998, the interests of the Mercury News were being effectively represented by the Plaintiffs, who had per- sistently sought production of the Report. After the protective order was entered, the Mercury News waited 12 weeks before seeking to intervene. The Defendants do not argue that the length of this delay itself renders the intervention untimely. Indeed, delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records. See, e.g., Beckman, 966 F.2d at 471 (affirming intervention 2 years after settlement); Public Citizen, 858 F.2d at 785 (collecting cases). Instead, the Defendants contend that the delay was prejudicial because they would not have agreed to the stipulated protective order had they known that the Report would become public. The Defendants argue that they passed up their opportunity to seek reconsideration of the district court's order to produce the Report in exchange for the confidentiality provisions of the stipulated protective order. In their view, permitting the Mercury News to intervene now would upset their bargained-for expectations.

17

   The Defendants' argument is unavailing. First, on this view, any intervention after the entry of the stipulated protective order would be untimely, as it would upset the bargainedfor expectations of the parties. It was, however, only upon entry of the stipulated protective order that the injury to the public's right of access became clear. Second, to the extent the Defendants relied on the stipulated protective order in making the decision to forgo a motion for reconsideration, such reliance was unreasonable. The right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away. Third, if a moftion to intervene is denied as untimely, it is likely that subsequent motions to intervene will also be held untimely, stymying the public's right of access altogether. Consequently, courts have recognized that,

18

   assuming an intervenor does assert a legitimate, pre sumptive right to open the court record of a particu lar dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order.

19

Public Citizen, 858 F.2d at 787 (quoting Mokhiber v. Davis, 537 A.2d 1100, 1106 (D.C. 1988)).

20

We conclude that the motion to intervene was timely.

2.

21

This brings us to the heart of the petition: does the public have a pre-judgment right of access to judicial records in civil cases? The Mercury News answers this question in the affirmative, relying on three independent bases: the First Amendment, the federal common law, and the Federal Rules of Civil Procedure.[3] For our purposes here, it is enough that we agree

22

with the Mercury News as to the latter two bases. See Hagestad, 49 F.3d at 1434 n.6. We leave for another day the question of whether the First Amendment also bestows on the public a prejudgment right of access to civil court records.

23

In Nixon v. Warner Communications, 435 U.S. 589 (1978), the Supreme Court recognized a federal common law right "to inspect and copy public records and documents." Id. at 597. Federal appellate courts have uniformly concluded that this common law right extends to both criminal and civil cases. See, e.g., Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 161 (3d Cir. 1993); Smith v. United States District Court, 956 F.2d 647, 650 (7th Cir. 1992); EEOC v. Erection Co., 900 F.2d 168, 169 (9th Cir. 1990); FTC v. Standard Fin. Mgt., 830 F.2d 404, 408 n.4 (1st Cir. 1987); In re Continental Ill. Sec. Litig., 732 F.2d 1302, 1308 (7th Cir. 1984); Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983). We have expressly recognized that the federal common law right of access extends to pretrial documents filed in civil cases, see Hagestad, 49 F.3d at 1434, and that the right of access applies prior to judgment in the criminal context, see Valley Broadcasting, 798 F.2d at 1291 n.2. Other circuits have expressly recognized that the common law right reaches documents filed in connection with motions for summary judgment. See Westinghouse, 949 F.2d at 66061; Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982); see also Leucadia, 998 F.2d at 164 (holding that common law right of access applies to all pretrial motions of a nondiscovery nature and the material filed in connection therewith). While we have never squarely held that the federal common law right of public access extends to materials submitted in connection with motions for summary

judgment in civil cases prior to judgment, we conclude that the unbroken string of authorities noted above leaves little doubt as to the answer. What doubt remains, we dispel for the Ninth Circuit today.[4]

24

That such a federal common law right exists, however, does not mandate disclosure in all cases. The federal common law right of access is not absolute, and is not entitled to the same level of protection accorded a constitutional right. See Valley Broadcasting, 798 F.2d at 1293. Thus, although the common law right creates a strong presumption in favor of access, the presumption can be overcome by sufficiently important countervailing interests. See Hagestad, 49 F.3d at 1434 (noting factors to weigh). Where the district court conscientiously undertakes this balancing test, basing its decision on compelling reasons and specific factual findings, its determination will be reviewed only for abuse of discretion. Id. Here, however, the district court never undertook this analysis, having barred the doors to the Mercury News by denying it leave to intervene. Insofar as the decision was based on a failure to recognize the existence of a pre-judgment federal common law right of access to civil court documents, it was clearly erroneous.

25

The Mercury News also contends that it is entitled to intervene in order to press the public's right of access to discovery materials pursuant to Federal Rule of Civil Procedure 26(c). It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. See Citizens First Nat'l Bank v. Cincinnati Ins. 178 F.3d 943, at 944-45 (7th Cir. May 28, 1999); Public Citizen, 858 F.2d at 789; In re Agent Orange Product Liability Litig., 821 F.2d 139, 145-46 (2d Cir. 1987). Rule 26(c) authorizes a district court to override this presumption where "good cause" is shown.

26

In the instant case, the district court entered a blanket stipulated protective order pursuant to Rule 26(c). Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document. See Beckman, 966 F.2d at 476; Public Citizen, 858 F.2d at 790. Here, the Mercury News sought to intervene in order to modify the stipulated blanket protective order so as to unseal the Report. This circuit has held that a nonparty may seek permissive intervention in order to test whether the "good cause" requirements of Rule 26(c) have been met with respect to a particular item of discovery. See Beckman, 966 F.2d at 473, 476; accord Pansy, 23 F.3d at 783-92; Public Citizen, 858 F.2d at 787-90. Because the district court here denied the Mercury News' motion to inter-

vene, it never reached the question of good cause under Rule 26(c). In light of Beckman and Public Citizen, this ruling was clearly erroneous.

27

For the reasons discussed above, we conclude that the third Bauman factor tips in favor of granting mandamus relief.

C.

28

It has been noted that the fourth and fifth Bauman factors are often mutually exclusive. See Calderon v. United States District Court, 134 F.3d at 983 n.4. The Mercury News' petition does not implicate the fourth factor -- there has been no showing of oft-recurring error on the part of the district courts of this circuit. However, as is plain from the discussion above, the fifth Bauman factor is implicated. The petition presents an important question that has not yet been directly addressed by this circuit -- whether the federal common law right of access extends to documents filed in civil cases that have not yet gone to judgment. Thus, we conclude that the fifth Bauman factor weighs in favor of granting the petition for mandamus.

III.

29

We conclude that mandamus relief is appropriate. We vacate the district court's order denying the Mercury News' motion for permissive intervention pursuant to Rule 24(b)(2), and remand to the district court for further proceedings. We express no opinion on whether the Mercury News should ultimately prevail in its motion to intervene; this is a question properly addressed to the discretion of the district court. See EEOC v. National Children's Ctr., 146 F.3d at 1048 (district court has considerable discretion in ruling on a motion for permissive intervention, even where all the prerequisites are met). We simply hold that the district court erred to the extent it premised its denial of the motion on a belief that the public had no prejudgment right of access to judicial records in civil cases.

30

The petition for writ of mandamus is GRANTED. The district court's order denying the Mercury News' motion to intervene is VACATED and this matter is REMANDED for further proceedings.

Notes:

[1]

Apparently the Plaintiffs preferred this compromise to the delays, uncertainty, and costs attendant on an appeal or motion for reconsideration.

[2]

This extended delay also precludes this court from construing the petition as a direct appeal. See Calderon, 137 F.3d at 1422 (where petition is filed within the time permitted for appeal, the court may construe it as a direct appeal, but this course is not available where the petition is filed outside the appeal period).

[3]

Citing United States v. Mindel, 80 F.3d 394, 398 (9th Cir. 1996), the Defendants contend that the Mercury News, as a nonparty intervenor, only has standing to press its First Amendment theory. In Mindel, the court was called on to decide whether a crime victim had standing to challenge a district court's order rescinding a defendant's obligation to make criminal restitution payments to the victim. Id. at 395. After finding that the victim did not have standing to bring an appeal, the opinion went on to hold that the victim was also barred from obtaining mandamus relief. Id. at 398. In so holding, the court noted that it had granted mandamus standing to news organizations that had been denied access to criminal proceedings, notwithstanding their inability to bring a direct appeal, but declined to extend this rule beyond the First Amendment context. Id.

The Defendants' reliance on Mindel is misplaced for at least two reasons. First, we have permitted news organizations to seek mandamus relief in order to vindicate the federal common law right of access to court proceedings. See Valley Broadcasting, 798 F.2d at 1297. Second, as discussed above, the Mercury News has standing to bring a direct appeal, thus taking this case completely outside the rationale of Mindel. See League of United Latin Amer. Citizens, 131 F.3d at 1307-08.

[4]

In resisting the unanimous authorities, the Defendants offer only In re Reporters Committee for Freedom of the Press, 773 F.2d 1325 (D.C. Cir. 1985), in support of their position that the common law right does not apply to civil cases prior to judgment. That reliance is misplaced, as that opinion limits its attention to the First Amendment right of access and expresses no opinion regarding the reach of the federal common law right. See id. at 1340.

- 187 F.3d

« up

## 178 F.3d 943

### 51 U.S.P.Q.2d 1218

## CITIZENS FIRST NATIONAL BANK OF PRINCETON,
Plaintiff-Appellee, Cross-Appellant,
v.
## CINCINNATI INSURANCE COMPANY, Defendant-Appellant,
Cross-Appellee.

### Nos. 98-3534, 98-3535 and 98-3957.

### United States Court of Appeals,
### Seventh Circuit.

*Submitted Feb. 23, 1999.*
*Decided May 28, 1999.*

Barry S. Alberts (submitted on briefs), Schiff, Hardin & Waite, Chicago, IL, for Plaintiff –Appellee.

Victor C. Peters, Hanson & Peters, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

1        In the course of the litigation from which these appeals arise, the district judge, in accordance with a stipulation by the parties, issued an order authorizing either party to designate as confidential, and thus keep out of the public record of the litigation, any document "believed to contain trade secrets or other confidential or governmental information, including information held in a fiduciary capacity." One of the parties has now asked us to permit it to file an appendix under seal. In support of this motion it submits the protective order just described that the district judge issued. That order was issued in March of 1997, however, two years ago, and we do not know enough about the case to be able to assess the order's current validity without the advice of the district judge, to whom, therefore, we remand the case for the limited purpose of enabling him to advise us whether in his view good cause exists for our allowing the appendix to be filed under seal. Caterpillar, Inc. v. NLRB, 138 F.3d 1105 (7th Cir.1998) (chambers opinion), and cases cited there. See also Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893, 898-99 (7th Cir.1994).

There is a deeper issue of confidentiality in this case than the currency of the protective order, and we must address it in order to make clear the judge's duty on remand. That issue is the judge's failure to make a determination, as the law requires, Fed.R.Civ.P. 26(c); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); Jepson, Inc. v. Makita Electric Works, Ltd., 30 F.3d 854, 858 (7th Cir.1994); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785-87 (3d Cir.1994), of good cause to seal any part of the record of a case. Instead of doing that he granted a virtual carte blanche to either party to seal whatever portions of the record the party wanted to seal. This delegation was improper. The parties to a

2   lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding.

« up

3       It is true that pretrial discovery, unlike the trial itself, is usually conducted in private. Seattle Times Co. v. Rhinehart, supra, 467 U.S. at 33, 104 S.Ct. 2199. But in the first place the protective order that was entered in this case is not limited to the pretrial stage of the litigation, and in the second place the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding. Grove Fresh Distributors, Inc. v. Everfresh Juice Co., supra, 24 F.3d at 897; Littlejohn v. BIC Corp., 851 F.2d 673, 677-78 (3d Cir.1988); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 593, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (concurring opinion); cf. Pepsico, Inc. v. Redmond, 46 F.3d 29 (7th Cir.1995) (chambers opinion). That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case. American Tel. & Tel. Co. v. Grady, 594 F.2d 594, 596 (7th Cir.1978) (per curiam); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 787-91 (1st Cir.1988); In re "Agent Orange" Product Liability Litigation, 821 F.2d 139, 144-46 (2d Cir.1987). The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected unless the media are interested in the case and move to unseal. The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it). See Arthur R. Miller, "Confidentiality, Protective Orders, and Public Access to the Courts," 105 Harv. L.Rev. 427, 492 (1991). He may not rubber stamp a stipulation to seal the record. In re Krynicki, 983 F.2d 74 (7th Cir.1992) (chambers opinion).

4       The order that the district judge issued in this case is not quite so broad as "seal whatever you want," but it is far too broad to demarcate a set of documents clearly entitled without further inquiry to confidential status. The order is not limited to trade secrets, or even to documents "believed to contain trade secrets," which anyway is too broad both because "believed" is a fudge and because a document that contains trade secrets may also contain material that is not a trade secret, in which case all that would be required to protect a party's interest in trade secrecy would be redaction of portions of the document. Also much too broad is "other confidential ... information," not further specified, and all "governmental information," a category absurdly overbroad. The order is so loose that it amounts, as we suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret. Such an order is invalid. E.g., Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir.1996); Pepsico, Inc. v. Redmond, supra, 46 F.3d at 31; City of Hartford v. Chase, 942 F.2d 130, 135-36 (2d Cir.1991). The order in this case is invalid for the additional reason that it is not limited to pretrial discovery; it seals the documents covered by it even after they are introduced at trial. Seattle Times Co. v. Rhinehart, supra, 467 U.S. at 36-37, 104 S.Ct. 2199; Poliquin v. Garden Way, Inc., 989 F.2d 527, 533 (1st Cir.1993); Littlejohn v. BIC Corp., supra, 851 F.2d at 677-78, 680-81.

    We are mindful of the school of thought that blanket protective orders ("umbrella orders"), entered by stipulation of the parties without judicial review and allowing each litigant to seal all documents that it produces in pretrial discovery, are unproblematic aids to the expeditious processing of complex commercial litigation because there is no tradition of public access to discovery materials. E.g., In re Alexander Grant & Co. Litigation, 820 F.2d 352, 355-57 (11th Cir.1987) (per curiam); Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir.1986); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1118-23 (3d Cir.1986); Manual for Complex

5          Litigation § 21.432 (3d ed.1995); Richard L. Marcus, "The Discovery Confidentiality
« up     Controversy," 1991 U. Ill. L.Rev. 457; Marcus, "Myth and Reality in Protective Order
         Litigation," 69 Cornell L.Rev. 1 (1983). The weight of authority, however, is to the
         contrary. Most cases endorse a presumption of public access to discovery materials,
         e.g., Grove Fresh Distributors, Inc. v. Everfresh Juice Co., supra, 24 F.3d at 897;
         Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 475-76 (9th
         Cir.1992); Public Citizen v. Liggett Group, Inc., supra, 858 F.2d at 788-90; Meyer
         Goldberg, Inc. v. Fisher Foods, Inc., 823 F.2d 159, 162-64 (6th Cir.1987); In re
         "Agent Orange" Product Liability Litigation, supra, 821 F.2d at 145-46, and
         therefore require the district court to make a determination of good cause before he
         may enter the order. E.g., EEOC v. National Children's Center, Inc., 98 F.3d 1406,
         1411 (D.C.Cir.1996); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 484-85 (3d
         Cir.1995); Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 165-
         67 (3d Cir.1993); In re Remington Arms Co., 952 F.2d 1029, 1032 (8th Cir.1991);
         City of Hartford v. Chase, supra, 942 F.2d at 135-37; Farnsworth v. Procter &
         Gamble Co., 758 F.2d 1545, 1547 (11th Cir.1985). Rule 26(c) would appear to
         require no less. And we note that both the First and Third Circuits, which used to
         endorse broad umbrella orders (e.g., Cryovac, Cipollone), have moved away from
         that position (Public Citizen, Glenmede, Pansy, Leucadia).

6          We do not suggest that all determinations of good cause must be made on a
         document-by-document basis. In a case with thousands of documents, such a
         requirement might impose an excessive burden on the district judge or magistrate
         judge. There is no objection to an order that allows the parties to keep their trade
         secrets (or some other properly demarcated category of legitimately confidential
         information) out of the public record, provided the judge (1) satisfies himself that
         the parties know what a trade secret is and are acting in good faith in deciding
         which parts of the record are trade secrets and (2) makes explicit that either party
         and any interested member of the public can challenge the secreting of particular
         documents. Such an order would be a far cry from the standardized, stipulated,
         permanent, frozen, overbroad blanket order that we have here.

7          Thus it will not be enough for the district judge on remand to point to the
         protective order as authority for allowing a portion of the appellate record to be
         filed under seal in this court. He must determine what parts of the appendix contain
         material that ought, upon a neutral balancing of the relevant interests, be kept out
         of the public record.

CC∅ | TRANSFORMED BY PUBLIC.RESOURCE.ORG

# 858 F2d 775 Public Citizen v. Liggett Group Inc

858 F.2d 775

57 USLW 2213, 12 Fed.R.Serv.3d 1099,

15 Media L. Rep. 2129

**PUBLIC CITIZEN, et al., Plaintiffs, Appellees,**

**v.**

**LIGGETT GROUP, INC., et al., Defendants, Appellants.**

*No. 88-1195.*

## United States Court of Appeals,

## First Circuit.

*Heard June 10, 1988.*

*Decided Sept. 28, 1988.*

Samuel Adams with whom Joseph J. Leghorn, Warner & Stackpole, Boston, Mass., Donald J. Cohn, Webster & Sheffield, John J. O'Connell and Seth M. Lahn, New York City, were on brief, for defendants, appellants.

Richard P. Campbell, John A.K. Grunert, Timothy Wilton, Campbell & Associates, P.C., Boston, Mass., William H. Crabtree and Edward P. Good, Detroit, Mich., on brief for Product Liability Advisory Council, Inc. and Motor Vehicle Mfrs. Ass'n of the U.S., Inc., amici curiae.

Cornish F. Hitchcock, with whom, Alan B. Morrison, Washington, D.C., Public Citizen Litigation Group, Carolyn Grace and Shapiro, Grace & Haber, Boston, Mass., were on brief, for plaintiffs, appellees.

Before BOWNES and BREYER, Circuit Judges, and CAFFREY,[*] Senior District Judge.

BOWNES, Circuit Judge.

1

    Liggett Group, Inc., and Liggett & Meyers Tobacco Co. (collectively "Liggett") appeal an order of the district court modifying an earlier protective order covering discovery materials produced by Liggett. Request for the modification came from a group of public health organizations represented by Public Citizen Litigation Group ("Public Citizen").[1] Liggett contends that Public Citizen lacked standing to request modification, both because it failed to obtain status as an intervening party under Rule 24 of

the Federal Rules of Civil Procedure and because it had no substantive right of access to the materials in question, and that it failed to establish adequate circumstances justifying the modification. We affirm in part but modify the district court's order.

I. BACKGROUND

A. Initial Proceedings

2

On August 26, 1980, Joseph C. Palmer died of lung cancer after having smoked cigarettes made by Liggett for a number of years. Three years later, Palmer's wife and mother filed a diversity action against Liggett in United States District Court for the District of Massachusetts. The Palmers asserted various state law claims against Liggett based on Liggett's allegedly inadequate warnings about the health risks of smoking.

3

Discovery began in 1984 and, during the course of discovery, three protective orders were entered by the district court. The first two orders, dated January 17, 1984, and January 25, 1985, pertained to the confidentiality of the plaintiffs' medical records. They are not at issue here. It is the third protective order, providing broad protection for documents produced by Liggett, which is the center of the current controversy.

4

This protective order grew out of plaintiffs' January 22, 1985 deposition subpoena directed to the custodian of documents at Arthur D. Little, Inc. ("Little"). Little is a private consulting firm that performed research work for Liggett in the early 1950's. Pursuant to the subpoena and by agreement of the parties, plaintiffs' counsel were permitted to inspect eighteen boxes of documents at Little's offices on January 30-31, 1985. Counsel began copying documents on February 1, 1985. On February 5, Liggett moved for a protective order under Rule 26(c) barring any nonlitigatory use of the Little documents and of all future discovery in the action. In support of its request, Liggett asserted that plaintiffs' discovery requests encompassed massive numbers of documents and that it would be "physically impossible for [Liggett] to designate individually each document containing confidential or secret information."

5

The plaintiffs opposed the protective order on the ground, among others, that Liggett had waived its claims to confidentiality by previously allowing counsel to review and copy the Little documents. The district court granted Liggett's motion and signed the protective order on February 25, 1985.

6

The order as approved had two components. The first is a blanket provision mandating that "[a]ll information produced or exchanged in the course of this civil action or any appeal arising therefrom ... shall be used solely for purposes of this case." The second provides heightened protection for any materials explicitly designated by a party as "confidential." With regard to both categories of materials, the protective order provides that "[w]ithin forty-five days after the final adjudication or settlement of all claims in this case, counsel for the parties either shall return all documents produced, if so requested by the producing party, or shall destroy all such documents. All copies of all documents, and all information and notes derived from them, also shall be destroyed."

7

Subject to the restrictions of the protective order, plaintiffs' counsel copied approximately 1200 documents (one box full) from the eighteen boxes of Little documents to which the plaintiffs had access. None of these documents were ever designated by Liggett as confidential. The documents have remained in the possession of plaintiffs' counsel since that time.

8

On June 7, 1985, the Wall Street Journal wrote a letter to the district court expressing interest in seeing the Little documents and seeking advice on how best to proceed in obtaining a modification of the protective order. One week later, plaintiffs' counsel filed a "Notice of Intent to Disseminate [the Little] Documents" to the Wall Street Journal. In support of their proposed action, plaintiffs cited Liggett's failure to designate any documents as confidential and to articulate any reason why release of the documents would harm Liggett. Plaintiffs also pointed out that many of the documents had been marked as exhibits for trial and thus would be made public eventually anyway. Liggett opposed the plaintiffs' proposed action, arguing that the protective order was still in full force, and, on June 28, 1985, filed its own "Motion to Require Compliance With Protective Order."

9

In response, plaintiffs filed a motion for clarification or modification of the February 25 protective order. Plaintiffs argued that the order should be read as applying only to documents designated as

confidential, because otherwise it would extend protection to information whether or not it qualified as confidential under the federal rules. At this point, the Wall Street Journal also sought leave to intervene in the action and filed its own request for clarification or modification. On July 16, 1985, the district court refused to modify the protective order and allowed Liggett's motion to compel compliance. It noted: "The dissemination of this material will not aid in the fair trial of this case. The trial is public and the Wall Street Journal is, of course, able to attend the trial." Plaintiffs' and the Wall Street Journal 's motions were denied.

10

   One week later, the Wall Street Journal moved for reconsideration of the district court order. The Journal 's motion was based primarily on the decision in Cipollone v. Liggett Group, Inc., 106 F.R.D. 573 (D.N.J. 1985), handed down the day after the order to compel compliance was issued in this case. Like the Palmers' case, Cipollone involved state law claims that inadequate warnings by Liggett had caused the death of a Liggett cigarette smoker. In the cited decision in Cipollone, Judge Sarokin had substantially modified a protective order, previously approved by a magistrate, which was "identical" to the February 25, 1985 protective order in this case. Id. at 579. Judge Sarokin found that the provision extending blanket protection to documents not designated as confidential "overstep[ped] the bounds permitted by Rule 26(c)" and he accordingly modified the order to extend only to confidential information. Id. at 584. Although acknowledging that its analysis diverged from Judge Sarokin's, the district court in this case denied the motion to reconsider. It noted: "Motion denied, without prejudice to renew. The Sarokin opinion is now under appeal. This motion should be renewed following a ruling by the Third Circuit Court of Appeals."[2]

11

   In April of 1986, Liggett moved to dismiss certain of plaintiffs' claims on the ground that they were preempted under the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. Sec. 1331 et seq. The district court denied the motion but certified the question pursuant to 28 U.S.C. Sec. 1292(b), to this court, which reversed. Palmer v. Liggett Group, Inc., 825 F.2d 620 (1st Cir.1987). We held that in passing the Act, Congress had struck a "carefully drawn balance between the purposes of warning the public of the hazards of cigarette smoking and protecting the interests of the national economy" and that permitting the interposition of state actions into the area would excessively disrupt the congressional scheme. Id. at 626 (quoting Cipollone v. Liggett Group, Inc., 789 F.2d 181, 187 (3d Cir.1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987)). The Palmers' state law claims were thus preempted.

12

In light of our opinion, Liggett moved in the district court to have the Palmers' complaint dismissed and judgment entered for Liggett. Over the plaintiffs' objections, the district court granted the motion and entered judgment for Liggett on October 6, 1987. No appeal was taken.

13

B. Public Citizen's Motion for Access to Discovery Materials

14

On December 28, 1987, Public Citizen filed two motions in district court. In its first motion, Public Citizen sought interlocutory relief: an order mandating that the parties maintain and not destroy or return discovery materials in the Palmer case pending resolution of its second motion. This first motion was allowed by the district court the same day. The second motion sought a modification of the February 25, 1985 protective order such that all discovery materials could be freely disseminated, except for those documents in which Liggett had "good cause" for continued confidentiality. It also requested that the district court order the parties to file all discovery materials in court. The broad relief requested by Public Citizen seemingly applied to materials produced both by Liggett and the plaintiffs, but, in argument, Public Citizen made clear that it sought access only to the Little documents produced by Liggett.

15

Public Citizen based its access claim on Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure. Rule 5(d) provides:

16

All papers after the complaint required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter, but the court may on motion of a party or on its own initiative order that depositions upon oral examination and interrogatories, requests for documents, requests for admission, and answers and responses thereto not be filed unless on order of the court or for use in the proceeding.

Rule 26(c) provides in pertinent part:

17

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

18

Rule 5(d), Public Citizen argued, creates a presumption that all discovery materials will be available to the public because they will be filed in court. Moreover, under Rule 26(c), public access can be cut off through a protective order only upon the showing of "good cause." Especially in light of the district court's dismissal of the Palmers' claims in this case, Public Citizen asserted that good cause for the February 25, 1985 protective order no longer existed. Thus, it said, the order should be modified and Rule 5(d) filing of discovery materials ordered.

19

Public Citizen did not make a formal motion to intervene in the case pursuant to Rule 24. Rather, it sought to proceed informally under Rule 16(g) of the Local Rules of the United States District Court for the District of Massachusetts. Local Rule 16(g) is based on Rule 5(d) of the Federal Rules, but it actually reverses in part the filing presumption of Rule 5(d), by providing that discovery materials ordinarily are not to be filed in court "unless so ordered by the court or for use in the proceeding." Essentially, Rule 16(g) codifies the local practice of district courts always ordering--as Rule 5(d) permits--that discovery materials otherwise subject to the Rule 5(d) filing requirement not be filed pursuant to Rule 5(d) unless the court asks that they be filed. To facilitate this scheme, Rule 16(g) provides that parties and nonparties may request that filing be ordered:

20

If for any reason a party or concerned citizen believes that any [discovery documents subject to the Rule 5(d) filing requirement] should be filed, an ex parte request may be made that such document be filed, stating the reasons therefor. The court may also order filing sua sponte.

21

Believing that Rule 16(g) thus obviated the need for obtaining formal intervenor status in order to request filing, Public Citizen sought relief as a nonparty. In the event the district court thought intervention necessary, however, Public Citizen did ask to be granted intervenor status and argued that intervention had been routinely granted in the past when nonparties sought access to judicial records.

22

Liggett opposed the motion on a number of grounds. It claimed first that Public Citizen could participate only as a Rule 24 intervenor and that the time for requesting intervention had passed. For this reason, Liggett said, Public Citizen lacked standing. Liggett also disputed Public Citizen's interpretation of Rule 5(d), maintaining that it created no general right of public access to discovery materials. Finally, Liggett argued that even if Public Citizen had standing to seek public access, there had been no showing of compelling need for a modification.

23

The district court held a hearing on January 28, 1988, with counsel for Liggett, Public Citizen and the plaintiffs present.[3] The court began by considering whether it still had jurisdiction over the matter, in light of its previous order of dismissal and judgment for Liggett on the merits. It found that jurisdiction did exist, because the outstanding protective order presented a live controversy extending past the dismissal of the underlying claims. The court also agreed with Public Citizen that there is a right of public access to discovery materials under the federal rules, a right that was especially strong in this case because of the important public health concerns surrounding the documents in question. Moreover, the court said, Liggett had failed to establish any compelling need for continuing the protective order. The court accordingly ordered that the eighteen boxes of Little documents to which the plaintiffs had access, along with the documents already in the plaintiffs' possession, be filed in court and made available to the public.[4]

24

The district court issued a stay pending appeal and this appeal followed.

II. THE DISTRICT COURT'S POWER

25

   We begin our analysis, as did the district court, by examining the court's jurisdiction, or power, to issue discovery-related orders after the court dismissed the underlying claims and entered a judgment on the merits. In so doing, we think it is important to distinguish between two separate and distinct aspects of the district court's January 28, 1988 order which is under review: the modification of the protective order and the order that the parties file the discovery materials in court.

26

   Under Local Rule 16(g), the parties to this case were, as parties to cases in the District of Massachusetts generally are, excused from filing discovery materials in court. The effect of this nonfiling was to deny the public the right it would otherwise have had to inspect freely the discovery materials in this case, because the materials were not kept in any publicly accessible location. Certainly the public has no right to demand access to discovery materials which are solely in the hands of private party litigants. Rule 16(g) does not in any way limit the use or dissemination of discovery materials by parties. Indeed, the Supreme Court has noted that parties have general first amendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31-36, 104 S.Ct. 2199, 2206-09, 81 L.Ed.2d 17 (1984); see also Oklahoma Hospital Ass'n v. Oklahoma Publishing Co., 748 F.2d 1421, 1424 (10th Cir.1984), cert. denied, 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 652 (1985). In this case, the only thing limiting the parties' rights to disseminate discovery materials was the protective order of February 25, 1985, which barred nonlitigatory use of the Little documents.

27

   Prior to the entry of that order the situation was this: the parties were not required to release publicly the discovery materials by filing them, but they were free to disseminate them if they chose to do so. Cf. Oklahoma Hospital Ass'n, 748 F.2d at 1424 ("While it may be conceded that parties to litigation have a constitutionally protected right to disseminate information gained by them through the discovery process absent a valid protective order, it does not follow that they can be compelled to disseminate such information.") (citing Seattle Times, 467 U.S. 20, 104 S.Ct. 2199). The same situation would have again existed on January 28, 1988, if the district court had modified or vacated the protective order, but not ordered filing under Rule 5(d). Instead, however, in response to Public Citizen's request, the district court both modified the protective order by virtually eliminating it, see note 4 supra, and ordered filing, without much distinguishing between these two aspects of its order.

Because we believe that the two aspects raise separate legal issues and concerns, we consider them individually.

28

With respect to the filing aspect of the court's order, we believe that by the time the district court acted on January 28, 1988, it lacked the power to impose such new requirements on the parties. Accordingly, we vacate that part of the district court's order.

29

Our reasoning is simple. The district court's judgment of October 6, 1987, was a final dismissal on the merits, concluding the litigation between the Palmers and Liggett. It left no substantive issue unresolved and it contained no provisions for equitable relief that would have required ongoing supervision by the district court. Under these circumstances, we think that the court simply lacked power to impose any new, affirmative requirements on the parties relating to discovery. See Cooper v. R.J. Reynolds Tobacco Co., 256 F.2d 464, 466-67 (1st Cir.) (once a district court dismisses a complaint and enters judgment, it lacks the power to grant a motion to amend the complaint), cert. denied, 358 U.S. 875, 79 S.Ct. 112, 3 L.Ed.2d 105 (1958); Bailey v. Proctor, 166 F.2d 392, 395 (1st Cir.1948) (a district court's jurisdiction to modify its own orders exists "as long as no final order has been issued"); see also Littlejohn v. BIC Corp., 851 F.2d 673, 683 (3d Cir.1988) ("[A]bsent allegations of fraud or other extraordinary circumstances, trial exhibits that were restored to their owner after a case has been completely terminated and which were properly subject to destruction by the clerk of court are no longer judicial records within the 'supervisory power' of the district court.").

30

To be sure, a district court has limited power to undo or alter a judgment after the judgment has been entered. Within strict time constraints, a court may amend a judgment under Rule 59. Courts may also correct clerical mistakes, Fed.R.Civ.P. 60(a), and even, for good reason, grant a party relief from judgment. Fed.R.Civ.P. 60(b). But no such relief was requested or granted here. The district court assumed, as did the parties, that the October 6, 1987 judgment was valid and final.

31

It is important to note that the purpose of discovery is to enable parties to an action to obtain material "which is relevant to the subject matter in the pending action," a purpose that obviously can no longer be served once a case has been dismissed. Indeed, once a case has been dismissed and rights to appeal have lapsed, parties are under no obligation, legal or practical, even to preserve

discovery materials they have obtained. In this case, for instance, both the plaintiffs and Liggett were free to destroy all the Little documents in their possession long before Public Citizen filed its motion, rendering any Rule 5(d) filing order meaningless.[5] Thus, although the district court had the power under Rule 5(d) to order filing of discovery materials during the pendency of the action, we hold that the court's power did not extend to postjudgment action.

32

Turning next to the district court's modification of the protective order, we think that an entirely different analysis applies. Unlike the filing order of January 28, 1988, the protective order was entered on February 25, 1985, long before the dismissal and judgment and at a time when the court clearly had the power to supervise and issue orders concerning discovery.[6] Moreover, the protective order, by its own terms, extended until forty-five days after the "final adjudication or settlement" of the Palmers' claims.[7] During the pendency of the protective order, including times after judgment, the order acted as an injunction, setting forth strict limitations on the parties' use of discovery materials.

33

In support of this "injunction," the district court necessarily had the power to enforce the order, at any point while the order was in effect, including periods after judgment. As was demonstrated by the court's order to compel compliance in the face of plaintiffs' expressed intention to provide the Little documents to the Wall Street Journal, violation of the protective order during its lifetime would have exposed the parties to contempt liability. Correlative with this power to enforce, the district court necessarily also retained power to modify the protective order in light of changed circumstances. The Supreme Court established long ago that even an injunction entered by consent of the parties--and this protective order was entered over the objections of the plaintiffs--is always modifiable.

34

Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.... [A] court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong.

35

United States v. Swift & Co., 286 U.S. 106, 114-15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); see also Coalition of Black Leadership v. Cianci, 570 F.2d 12, 14 (1st Cir.1978) ("There is little dispute that

a sufficient change in circumstances is a meritorious reason for a court to modify an injunction or consent decree."); Theriault v. Smith, 519 F.2d 809, 810 (1st Cir.1975); Food Fair Stores, Inc. v. Food Fair, Inc., 177 F.2d 177, 186 (1st Cir.1949). "When dealing with its equitable powers, a court possesses the intrinsic power to adapt the injunction to meet the needs of a 'new day.' " Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1030 (9th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

36

   Consistent with this well-established rule, we think that the district court in this case had the inherent power to modify its February 25, 1985 protective order for so long as the order was in effect. We note that the courts and commentators seem unanimous in finding such an inherent power to modify discovery-related protective orders, even after judgment, when circumstances justify. E.g., Ex Parte Uppercu, 239 U.S. 435, 440, 36 S.Ct. 140, 141, 60 L.Ed. 368 (1915); FDIC v. Ernst & Ernst, 677 F.2d 230 232 (2d Cir.1982); Krause v. Rhodes, 671 F.2d 212 (6th Cir.), cert. denied, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); United States v. GAF Corp., 596 F.2d 10, 16 (2d Cir.1979); American Telephone & Telegraph Co. v. Grady, 594 F.2d 594, 596-97 (7th Cir.1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); Olympic Refining Co. v. Carter, 332 F.2d 260, 265-66 (9th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L.Rev. 1, 41-53 (1983); Note, Nonparty Access to Discovery Materials in Federal Court, 94 Harv.L.Rev. 1085, 1091-96 (1981).

37

   In sum, although the court lacked power to impose new discovery-related obligations after dismissing the case on the merits, we find that, because the protective order was still in effect, the district court had the power to make postjudgment modifications to the protective order in light of changed circumstances. Accordingly, we move on to consider the propriety of the modification actually ordered.

   III. STATUS OF THE NONPARTY MOVANTS

38

   As previously noted, Public Citizen did not secure Rule 24 intervenor status in this case, but rather sought to participate informally under Local Rule 16(g) as a nonparty movant.[8] In the district court, Liggett maintained that intervention was necessary and now, on appeal, challenges the district court's modification order on the ground that Public Citizen lacked standing because it was not granted

intervenor status. Liggett also claims that Public Citizen was ineligible for Rule 24 intervention in any event because its motion was untimely. We find Liggett's procedural arguments unavailing.

39

   The question of whether nonparty movants may obtain relief in a civil case appears to be one of first impression in this court. Prior third-party challenges to court closures and protective orders have involved either parties who did obtain formal intervenor status, Anderson v. Cryovac, Inc., 805 F.2d 1, 3-4 (1st Cir.1986); In re San Juan Star Co., 662 F.2d 108, 112 (1st Cir.1981), or criminal cases where intervention is not available. E.g., In re Globe Newspaper Co., 729 F.2d 47, 50 n. 2 (1st Cir.1984); see also Press Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (third-party claim of access to criminal proceeding); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (same). We think this fact is significant in and of itself, for it demonstrates that, where intervention is available (i.e. civil cases), it is an effective mechanism for third-party claims of access to information generated through judicial proceedings. Like this case, both Anderson and San Juan Star involved challenges to protective orders covering discovery materials and, in each case, Rule 24 provided a workable means for mounting the challenge. Public Citizen has pointed to no circumstances in this case which made formal intervention impossible or impracticable.

40

   Relying on the language of Rule 24, the Fifth Circuit has previously held that intervention is "the procedurally correct course" for third-party challenges to protective orders. In re Beef Industry Antitrust Litigation, 589 F.2d 786, 789 (5th Cir.1979) (emphasis added). We agree. Rule 24(c) provides that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c) (emphasis added). The language of the rule is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to insure that claims for intervention are handled in an orderly fashion. Especially in view of the failure to show that compliance with the rule would be unduly onerous or ineffectual, we are not willing to create a special category of non-Rule 24 intervention for third parties who wish to challenge protective orders through informal motion. Public Citizen should have been granted Rule 24 intervenor status before the district court acted on its motion for access to the discovery materials.

41

We do not, however, view this error as fatal to Public Citizen's claim. We find two factors persuasive. First, although Public Citizen sought to proceed in the first instance without Rule 24 intervention, it did request, in the alternative, that it be granted intervenor status if the district court thought that intervention was necessary. Second, the district court did afford relief to Public Citizen as if it were a proper party to the case, thus implicitly granting it intervenor status. Under similar circumstances, other federal courts have been quite lenient in permitting participation by parties who failed to comply strictly with Rule 24. In Beef Industry Antitrust Litigation, 589 F.2d at 788-89, the Fifth Circuit, while setting down a prospective Rule 24 intervention requirement, was willing to overlook a failure to comply with Rule 24 in a discovery access case in light of "the fact that the district court's acts might be considered equivalent to authorizing intervention." The Third and Eighth Circuits have also overlooked a lack of formal compliance when the district court afforded relief to a nonparty and thus implicitly granted it intervenor status. United States v. Criden, 675 F.2d 550, 552 n. 2 (3d Cir.1982); Roach v. Churchman, 457 F.2d 1101, 1104 (8th Cir.1972); see also Ex Parte Uppercu, 239 U.S. 435, 441, 36 S.Ct. 140, 141, 60 L.Ed. 368 (1915) (a prefederal rules case) (third-party assertion of right of access to discovery materials "requires no particular formality"). We think that a similar approach is appropriate here.

42

It is clear from the proceedings below that the district court considered Public Citizen to have a legitimate interest in seeking modification of the protective order. We have no doubt that, had the district court thought Rule 24 intervention necessary, it would have treated Public Citizen's motion as a request for intervention and granted it. That being so, no purpose would now be served if this court were to dismiss the appeal and send this case back to the district court for the rote procedural step of approving intervention. After a substantial delay, the case would still return to us in a similar posture for resolution of the substantive issue underlying this dispute. For purposes of this appeal, then, we will treat Public Citizen as having requested and been granted status as a Rule 24 intervenor. A caveat is, however, in order: "[W]e reiterate that a formal motion for intervention should have been filed pursuant to Rule 24(c). Future litigants should not attempt to use this opinion to circumvent the clear requirements of the rule." Beef Industry Antitrust Litigation, 589 F.2d at 789.

43

We turn next to Liggett's contention that, even if Public Citizen is treated as having requested intervention, its motion to modify was untimely as a matter of law because it was filed on December 28, 1987, twelve weeks after the judgment on the merits in this case and after the time for appeal

from that judgment had expired. We begin our analysis with two fundamental principles. First, although Rule 24 requires that an application for intervention be "timely," the rule itself sets down no bright line standard for determining what constitutes timeliness. It has thus been held that "timeliness is to be determined from all the circumstances." NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973); see also Culbreath v. Dukakis, 630 F.2d 15, 20 (1st Cir.1980). Second, timeliness determinations under Rule 24 are vested in the sound discretion of the district court. NAACP, 413 U.S. at 366, 93 S.Ct. at 2603. Here, the court found that Public Citizen's motion was timely, and we can overturn that ruling only if an abuse of discretion is demonstrated. See id.; Garrity v. Gallen, 697 F.2d 452, 455 (1st Cir.1983).

44

It is also important to note that postjudgment intervention is not altogether rare. Numerous courts have allowed third parties to intervene in cases directly analogous to this one, many involving delays measured in years rather than weeks. E.g., Wilson v. American Motors Corp., 759 F.2d 1568 (11th Cir.1985) (third party permitted to intervene after judicially-approved settlement in order to challenge a seal on court documents); FDIC v. Ernst & Ernst, 677 F.2d 230 (2d Cir.1982) (third party permitted to intervene and challenge a stipulated confidentiality order two years after a judicially-approved settlement); Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir.) (third party permitted to challenge a protective order three years after the underlying litigation had terminated), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); Mokhiber v. Davis, 537 A.2d 1100, 1104-06 (D.C.1988) (third party permitted to intervene four years after a judicially-approved consent decree in order to challenge a protective order); cf. United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) (permitting postjudgment intervention for purposes of appeal).

45

Adopting the analysis of the Fifth Circuit in Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir.1977), this court in Culbreath v. Dukakis set down a four-part test for determining whether a motion to intervene is timely under the totality of the circumstances.[9] 630 F.2d at 20-24. Applying the same standard to this case, we find no abuse of discretion in the district court's treatment of Public Citizen's motion as timely.

46

The first Culbreath factor to be considered is the length of time that Public Citizen knew or reasonably should have known of its interest in this case before it petitioned to intervene. 630 F.2d at 20. Analysis of this factor is somewhat complicated here. On the one hand, it is clear that Public

Citizen knew of the underlying litigation in this case, and therefore implicitly knew of the protective order, long before judgment was entered in the district court. Public Citizen concedes as much and, in fact, Public Citizen represented the same organizations involved in this appeal as amici in the earlier appeal to this court on the issue of federal preemption. On the other hand, it is now well-established that it is not the simple fact of knowing that a litigation exists that triggers the obligation to file a timely application for intervention. Rather, the appropriate inquiry is when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties. United Airlines, 432 U.S. at 394, 97 S.Ct. at 2469; Legal Aid Society v. Dunlop, 618 F.2d 48, 50 (9th Cir.1980); Stallworth, 558 F.2d at 264. By this standard, we have no trouble concluding that Public Citizen moved reasonably promptly.

47

    To begin with, the very same request for modification of the protective order put forth by Public Citizen after judgment had been made by plaintiffs and the Wall Street Journal in 1985. In turning down those requests, the district court cited two factors: first, that many of the discovery documents in question presumably would be introduced at trial and made public at that time; and, second, that the very issue of the propriety of this protective order was being litigated in the Cipollone case in the Third Circuit, making it appropriate for the court to wait until after the Third Circuit litigation was resolved to decide the protective order issue in this case. Certainly, then, Public Citizen cannot be said to have been untimely for failing to act prior to the resolution of the issues underlying the court's two concerns.

48

    With respect to the first factor, the possibility of trial could not be ruled out prior to October 6, 1987, when the district court dismissed the claims and entered judgment. Moreover, even that judgment did not finally resolve the matter, for the plaintiffs had until November 5, 1987, to appeal the judgment, and the time for plaintiffs to petition for certiorari review of this court's preemption decision (upon which the dismissal was based) did not expire until November 23, 1987. Counting back from the December 28, 1987 filing date of its motion, Public Citizen's delay was, therefore, eight weeks or four weeks depending on which of these latter dates is used. If we refer to the second factor cited by the court--the Cipollone litigation--Public Citizen's delay is only three weeks, for, as we indicated in note 2 supra, the protective order aspect of the Cipollone case was not resolved until December 7, 1987. In the context of this case, which had been proceeding for well over four years, we do not think that this delay, on the order, of weeks was material.

49

The second Culbreath factor to be considered is the prejudice to existing parties due to Public Citizen's delay in intervening. 630 F.2d at 21. This factor encompasses the basic fairness notion that intervention should not work a "last minute disruption of painstaking work by the parties and the court." Id. at 22. For purposes of this factor, therefore, it is necessary to ask why a would-be intervenor seeks to participate, for if the desired intervention relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties. Here, of course, Public Citizen's motion pertains to a particularly discrete and ancillary issue, as demonstrated by the fact that the merits of the case have been already concluded and are no longer subject to review. Because Public Citizen sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case.

50

The analysis of the District of Columbia Court of Appeals in the recent case of Mokhiber v. Davis, 537 A.2d 1100 (D.C.1988), is particularly relevant on this point. In Mokhiber, an investigative journalist petitioned to intervene in a civil case in order to gain access to discovery materials and related court filings, which had been placed under a protective order. Judgment in the case had been issued four years previously pursuant to a stipulation of settlement. Like Public Citizen in this case, the journalist in Mokhiber sought to modify the protective order to facilitate public access. Although the court eventually denied on substantive grounds the request for modification as to some of the discovery materials, it rejected the notion that intervention four years after settlement was untimely given the "special nature of the right" asserted.

51

[O]rdinary principles applicable to intervention do not work well here. The filing of a motion to intervene is simply recognized as an appropriate means of raising assertions of public rights of access to information regarding matters in litigation. "Intervention of this type may properly be termed de bene esse, to wit, action that is provisional in nature and for the limited purpose of permitting the intervenor to file a motion to be considered separately, requesting that access to proceedings or other matters be granted." Commonwealth v. Fenstermaker, 530 A.2d 414, 416 n. 1 (Pa.1987).

52

[T]o the extent [a right of access] exists, it exists today for the records of cases decided a hundred years ago as surely as is does for lawsuits now in the early stages of motions litigation. The fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case. Moreover, access to court records does not involve relitigation of the underlying dispute, so the rationale behind requiring extraordinary circumstances for postjudgment intervention does not as a rule apply to access claims.[10]

53

[T]he prejudice the parties would suffer from postjudgment access to court documents should not determine the timeliness of the intervention to assert [a] right of access. Instead, assuming an intervenor does assert a legitimate, presumptive right to open the court record of a particular dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order--that is, the court's judgment as to whether, under the circumstances, the balance of equities favoring sealing overrides any presumptive right of access.

54

Id. at 1105-06. We find this analysis compelling and reject the notion that prejudice to the parties in this action would be grounds for denying intervention by Public Citizen.

55

The third and fourth Culbreath factors to be considered are the prejudice that would be suffered by Public Citizen if it were not allowed to intervene and the existence of extraordinary circumstances militating for or against intervention. 630 F.2d at 22, 24. Given our treatment of the first two factors, we need not dwell overlong on these considerations. It is sufficient to note that Public Citizen has asserted, on behalf of the public, a right to have the protective order modified such that the discovery materials may be publicly disseminated, and that, prior to Public Citizen's action, this interest was not being pursued by any of the parties to the case.[11] If Public Citizen's motion is found to be untimely, future intervention attempts will almost certainly also be found to be untimely, and the public's right of access will go untested. As the district court found, there is a strong public interest in the documents at issue, which concern an important public health issue.

56

Having thus concluded that Public Citizen can be considered as a proper Rule 24 intervening party, we believe it has standing to pursue the public access claim here at issue. Courts, including this one, routinely have found that third parties have standing to assert their claim of access to documents in a

judicial proceeding. E.g., In re Alexander Grant & Co. Litigation, 820 F.2d 352, 354 (11th Cir.1987); Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir.1986); In re Globe Newspaper Co., 729 F.2d 47, 50 n. 2 (1st Cir.1984); In re San Juan Star Co., 662 F.2d 108 (1st Cir.1981); see also cases cited supra at 782, 784.[12]

57

### IV. A RIGHT OF PUBLIC ACCESS TO DISCOVERY?

58

In assessing the claimed right of access in this case, it is helpful to begin by noting what is not being claimed. Unlike many prior litigants in this court and others,[13] Public Citizen has not claimed that it has--independent of the federal rules--a general common law or first amendment right to inspect the discovery materials. Such a claim has been largely foreclosed by the Supreme Court's decision in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), which must serve as the background for any claimed right of access to discovery materials.

59

In Seattle Times, members of a religious group sued the Seattle Times in state court for defamation and invasion of privacy. As part of its defense of that case, the Seattle Times sought to discover information regarding membership in and donations to the religious group during the previous five years. When the group resisted, the trial court compelled production, but entered a protective order under the state analog of Federal Rule 26(c) prohibiting the Seattle Times from disseminating or using the information in any way except as necessary to prepare and try its case. The Seattle Times then challenged the protective order as a prior restraint on speech in violation of the first amendment.

60

The Supreme Court rejected the Seattle Times's claim and also rejected the suggestion that review of a protective order requires any heightened scrutiny under the first amendment. Although acknowledging that litigants do have limited first amendment rights concerning information obtained through discovery, the Court focused on the fact that discovery is "a matter of legislative grace" and that litigants gain access to discovery materials "only by virtue of the trial court's discovery processes." Id. at 31-32, 104 S.Ct. at 2207. Moreover, the Court said, protective orders "furthe[r] a substantial government interest unrelated to the suppression of expression." Id. at 34, 104 S.Ct. at 2208. Thus, where "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial discovery, and does not restrict the dissemination of the

information if gained from other sources, it does not offend the first amendment." Id. at 37, 104 S.Ct. at 2209-10.

61

   As we said in Anderson v. Cryovac, Inc., 805 F.2d 1, 6-7 (1st Cir.1986), the Seattle Times decision has not completely eliminated the first amendment as a relevant consideration in reviewing protective orders. Seattle Times has, however, established that first amendment scrutiny of protective orders "must be made within the framework of Rule 26(c)'s requirement of good cause." Anderson, 805 F.2d at 7.

62

   It is, therefore, very significant that Public Citizen has not asserted a common law or first amendment right of access independent of the federal rules. Rather, Public Citizen has based its claim on the federal rules, asserting that, under Rules 5(d) and 26(c), the public has a presumptive right of access to discovery materials unless good cause for confidentiality is shown, and that no good cause exists here. Nothing in Seattle Times or Anderson precludes such a claim. Discovery is "a matter of legislative grace," 467 U.S. at 32, 104 S.Ct. at 2207, but Public Citizen asks for no more than compliance with the legislative scheme embodied in the federal rules.

63

   In seeking to defeat Public Citizen's claim, Liggett and amici Product Liability Advisory Council, Inc., and Motor Vehicle Manufacturers Association of the United States, Inc., have pointed to some expansive language in Seattle Times, Anderson and similar cases to bolster their claim that the public should not be afforded access to discovery materials. See, e.g., Seattle Times, 467 U.S. at 33, 104 S.Ct. at 2207 ("pretrial depositions and interrogatories are not public components of a civil trial"); Mokhiber, 537 A.2d at 1110 ("there exists no common law tradition of access to discovery materials as such"). Liggett and amici have used these statements to launch broad-based "policy" arguments to the effect that litigants have legitimate privacy interests in discovery materials and that permitting public access would undermine these privacy interests and excessively disrupt the litigation process. We acknowledge that our own Anderson opinion seemingly lends some support to this contention. 805 F.2d at 12 (permitting public access to discovery might actually make the civil discovery process "more complicated and burdensome than it already is"); see also Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L. Rev. 1 (1983) (generally criticizing claimed rights of public access to discovery).

64

We think, however, that these arguments and authorities are misplaced here. All of the cases upon which Liggett and amici rely are cases where the claimed right of access was based not on the federal rules, but on the common law or the first amendment. They are cases where, in essence, litigants put forth common law and constitutional arguments in an effort to trump application of the federal rules standard for protective orders. In rejecting such arguments and adhering to the federal rules standard, courts sensibly have noted that a contrary result would lead to thwarting the interests of privacy and litigative efficiency which are embodied in the federal rules. But nothing in those opinions purported to elevate privacy and efficiency as factors to be considered over and above compliance with the federal rules. Rather, the point of the cases was that, because of privacy and efficiency concerns, the federal rules should be followed.

65

Thus, when in Anderson we noted that "[t]here was no tradition of public access to depositions before [passage of the federal rules in] 1938," we went on to say that now, under Rule 5(d), courts may require public filing of discovery requests and responses. 805 F.2d at 12. Likewise, in Alexander Grant & Co. Litigation, the Eleventh Circuit recognized that, on the one hand, "private litigants have protectable privacy interests in confidential information disclosed through discovery," but it added that the means for protecting that privacy interest is Rule 26(c), not judicial fiat. 820 F.2d at 355.

66

Liggett and amici would have us turn these cases on their heads by holding that privacy and litigative efficiency concerns ought to work independently of the federal rules, actually limiting a district court's ability to deny protection under Rule 26(c), even when no good cause is shown. We are not willing to do so. This case involves a claim of access to discovery materials under the federal rules and we believe that the merits of the claim must be judged by the text of the rules and the applicable cases interpreting the rules. The rules themselves seek to accommodate concerns of privacy and litigative efficiency, and we find no reason for imposing additional judge-made constraints on the district court's control of discovery. Accordingly, we turn to consideration of the relevant federal rules.

67

Centrally at issue is Rule 26(c), which permits a district court to issue protective orders covering discovery materials upon a showing of good cause:

68

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense....

69

As the Second Circuit has noted,

70

A plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.... Any other conclusion effectively would negate the good cause requirement of Rule 26(c): Unless the public has a presumptive right of access to discovery materials, the party seeking to protect the materials would have no need for a judicial order since the public would not be allowed to examine the materials in any event.

71

In re Agent Orange Product Liability Litigation, 821 F.2d 139, 145-46 (2d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 289, 344, 98 L.Ed.2d 249 (1987), aff'g 104 F.R.D. 559, 567 (E.D.N.Y. 1985). Rule 26(c)'s good cause requirement means that, "[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." American Telephone & Telegraph Co. v. Grady, 594 F.2d 594, 596 (7th Cir.1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); accord Wilk v. American Medical Ass'n, 635 F.2d 1295, 1299 (7th Cir.1980); In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 101 F.R.D. 34, 38-41 (C.D. Cal. 1984); Note, Nonparty Access to Discovery Materials in the Federal Courts, 94 Harv.L.Rev. 1085, 1085-86 (1981). Rule 26(c) thus lends support to the right of access claimed by Public Citizen and found by the district court below.

72

We agree with the Second Circuit. It is implicit in Rule 26(c)'s "good cause" requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public. In this instance, Public Citizen wished to relieve the plaintiff of the burden of an order that

prevented it from making public previously obtained discovery materials. Given the fact that Public Citizen directly benefitted from modification of that order, and for the reasons previously pointed out, we conclude that it had standing to intervene in the case and to ask the court to modify its pre-existing protective order.

V. STANDARD FOR MODIFYING PROTECTIVE ORDERS

73

Although it is conceded that the governing standard for entry of a Rule 26(c) protective order is good cause, Liggett asserts that a different standard ought to apply when a court considers modifying an existing protective order. Liggett argues that parties to a protective order have legitimate reliance interests in its continued validity and finality. Citing to a Second Circuit opinion, Liggett claims that an existing protective order can be modified only on a showing of "extraordinary circumstance or compelling need." Martindell v. International Telephone & Telegraph Corp., 594 F.2d 291 (2d Cir.1979); see also Palmieri v. New York, 779 F.2d 861 (2d Cir.1985). Not surprisingly, Liggett finds that no extraordinary circumstances are present here.

74

We think that Liggett's argument must be rejected. Even accepting that an extraordinary circumstances standard applies, we do not think that the district court erred in modifying the protective order. Control of pretrial discovery, including the entry or modification of a protective order, is a matter falling peculiarly within the discretion of the district court. Agent Orange, 821 F.2d at 147; Krause v. Rhodes, 671 F.2d 212, 219 (6th Cir.), cert. denied, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); Wilk v. American Medical Ass'n, 635 F.2d 1295, 1299 (7th Cir.1980); 8 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2036, at 268 (1970). Here, the district court found that the dismissal on the merits constituted a significant change in circumstances warranting modification of the protective order. Under the circumstances, we cannot say that the court abused its discretion.

75

To begin with, the protective order modified by the district court was a blanket protective order, that is, it was an order extending broad protection to all documents produced by Liggett, without a showing of good cause for confidentiality as to any individual documents. Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification. See Manual for Complex Litigation, Second Sec. 21.431, at 53 & n. 60 (1985); In re Coordinated Pretrial Proceedings

in Petroleum Products Antitrust Litigation, 101 F.R.D. 34, 40-44 (C.D. Cal. 1984). Moreover, as the
district court made clear in rejecting pretrial attempts to modify the protective order, the point of this
protective order was to promote a fair trial, not to guarantee Liggett perpetual secrecy. See supra at
777 ("The dissemination of this material will not aid in the fair trial of this case. The trial is public and
the Wall Street Journal is, of course, able to attend the trial."). The dismissal of the case on the merits
eliminated the possibility of trial and was, therefore, a significant change in circumstances calling into
question the necessity of the protective order. Under similar circumstances, the Second Circuit--the
very court that crafted it--found that the extraordinary circumstances test was met. Agent Orange,
821 F.2d at 147-48 (upholding the district court's modification of a blanket protective order in light of
a settlement of the underlying dispute).

76

   It is argued that a protective order of this sort may lead a party to be more forthcoming in
discovery. A protective order may induce a party, for example, to permit an opponent to go through
its files, taking relevant material. The party would not insist upon screening the materials first because
it would not fear that irrelevant or confidential material, protected by the order, would be made public.
Insofar as a rationale of this sort underlay the original protective order, it would seem unfair later to
remove that order's protection.

77

   We do not accept this argument as controlling here, however, for one simple reason. As far as we
can tell from this record, the particular documents that Public Citizen seeks are not documents that
were irrelevant to the litigation nor do they contain trade secrets or other specially confidential
material. Insofar as it applies to the documents they seek, the protective order did not rest upon the
rationale just mentioned. Rather, the court initially protected those documents for a very different
reason: namely, the court, believing that the documents would become public in any event during
trial, wished to conduct that trial free of the pretrial publicity that might follow premature release of
the documents. Liggett, of course, remained free, in respect to any particular document, to argue to
the district court that the document in question either was irrelevant to the discovery request or
should remain protected as a confidential document for some special reason (such as "trade secrets")
that would have prevented its having been made public at trial.

78

Moreover, we are not convinced that the extraordinary circumstances standard proffered by Liggett is applicable here in any event. For one thing, the Martindell case principally relied upon by Liggett is clearly distinguishable, having been based on policy concerns not applicable here. Martindell involved an attempt by the United States government as prosecutor to short cut its normal investigative procedures by obtaining sealed depositions in a shareholder derivative suit to which it was not a party. Pointing out the reliance interests of witnesses who testified pursuant to the protective order without invoking their fifth amendment right against self-incrimination, the Second Circuit refused to modify the protective order. 594 F.2d at 294-97; see also Palmieri, 779 F.2d at 863-66 (applying Martindell standard and denying a request by New York State to intervene in a private antitrust action to access sealed documents). "[W]hat was critical to Martindell ... was the fact that 'the party seeking access ... was the federal government, which ... had at its disposal special investigatory powers not available to private litigants....' " Palmieri, 779 F.2d at 866 (quoting Wilk, 635 F.2d at 1299-1300). This case, of course, does not involve government intervention and so, even according to the Second Circuit, the justification for the extraordinary circumstances test is not present.

79

Outside the area of government intervention, courts have applied much more lenient standards for modification. See e.g., Wilk, 635 F.2d at 1300 (holding that the court's prior invocation of the extraordinary circumstances test "was an unfortunate choice of words"); Tavoulareas v. Washington Post Co., 737 F.2d 1170, 1172 (D.C. Cir.1984) (suggesting that the good cause standard of Rule 26(c) governs modifications of protective orders). While we need not decide the matter definitively, we reject the "extraordinary circumstances" standard. In a case such as this, where the party seeking modification has pointed to some relevant change in the circumstances under which the protective order was entered, we think that a standard less restrictive than "extraordinary circumstances" is appropriate. We need not define how "less restrictive" the standard should be because we find that under these facts the district court had the legal power to modify its prior protective order: the reasons underlying the initial promulgation of the order in respect to the particular document sought no longer exist; and the district court made a reasoned determination that public interest considerations favored allowing counsel to make those particular documents public.

VI. CONCLUSION

80

The district court's order is affirmed with respect to the modification of the protective order, but reversed with respect to the requirement that the parties file discovery materials in court. The parties

are, therefore, free to disseminate discovery materials, but they are not obligated to make them publicly available by filing them in court.

81

  SO ORDERED.

*

Of the District of Massachusetts, sitting by designation

1

The organizations are American Cancer Society, American Heart Association, American Lung Association and American Public Health Association

2

The Third Circuit eventually issued a writ of mandamus, noting errors in Judge Sarokin's analysis, and remanded for reconsideration. Cipollone v. Liggett Group, Inc., 785 F.2d 1108 (3d Cir.1986). On remand, Judge Sarokin modified his analysis with respect to documents designated as confidential, but nonetheless found that Liggett had failed to establish good cause for protection under Rule 26(c). Judge Sarokin also stuck by his original order striking down the blanket protection for undesignated documents. Cipollone v. Liggett Group, Inc., 113 F.R.D. 86 (D.N.J. 1986). The Third Circuit subsequently denied Liggett's petition for mandamus concerning that decision, and the Supreme Court denied a Liggett petition for certiorari on December 7, 1987. Cipollone v. Liggett Group, Inc., 822 F.2d 335 (3d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987)

3

Although the plaintiffs had not filed a formal response to Public Citizen's request, the plaintiffs vigorously supported Public Citizen's efforts at the hearing. As they had previously, plaintiffs said that they were interested in disseminating to the public the Little documents in their possession

4

Unsure whether Liggett actually had designated any discovery materials as confidential under the February 25, 1985 protective order, Public Citizen had, in its motion for modification, suggested that documents which Liggett maintained were confidential might be exempted from filing, subject to in camera review by the district court to insure that they were indeed confidential. At the hearing, however, it was brought out by plaintiffs that no designations had been made, and Public Citizen apparently abandoned its suggestion for document-by-document review of the materials. In any event, the district court ruled that Liggett's time for designating documents as confidential had passed and that only documents containing trade secrets would be exempt from the court's filing order

5

Counsel for Public Citizen conceded at oral argument that the parties could have destroyed the discovery materials prior to Public Citizen's motion without violating the protective order or any other legal requirement and that, in that case, Public Citizen would have been out of luck in seeking access

6

On this appeal, no one has contended that the February 25, 1985 protective order was not a valid protective order at the time it was entered. We have assumed, without deciding, that it was indeed valid

7

The Palmers' claims were not "finally adjudicated" until November 23, 1987, when the period for petitioning for certiorari review of this court's preemption decision expired. See discussion infra at 785. Public Citizen's motion of December 28, 1987, was thus made during the allotted forty-five day period, while the protective order was still in effect

8

Local Rule 16(g) is quoted supra at 779. Rule 24 provides in relevant part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

9

In Culbreath, we upheld the district court's denial of intervention on timeliness grounds, but the facts there--attempted intervention on the merits four years after the litigation began and two months prior to submission of a consent decree--are far different from those in the present case. We thus refer to Culbreath not for its holding per se, but for the timeliness test it established

10

It is for precisely this reason that Liggett's citation to Burney v. City of Pawtucket, 728 F.2d 547 (1st Cir.1984), is misplaced. In Burney, we set down a hard and fast rule that intervention on the merits "is never timely ... if filed

after rights to appeal have expired." Id. at 549. The Burney rule does not, however, and was never intended to, apply to cases like this where a party does not seek to disturb the merits, but only to intervene on the separate issue of access to documents

11

Although the plaintiffs did seek permission to disseminate the discovery materials at an earlier stage of the litigation and continue to support Public Citizen's claim, they took no steps on their own to have the protective order modified after judgment

12

We have uncovered only one access case where standing was found lacking, but that case is clearly distinguishable. Oklahoma Hospital Ass'n v. Oklahoma Publishing Co., 748 F.2d 1421 (10th Cir.1984), cert. denied, 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 652 (1985), involved a protective order entered by stipulation covering documents solely in the hands of the parties. The court found that a third party lacked standing to attack the protective order because, even if the protective order were modified, the parties in possession of the documents would not, and could not be compelled to, disseminate the documents to the third party. Id. at 1424-25. Here, however, far from agreeing to the protective order, the plaintiffs to this action have opposed the protective order at every stage. Moreover, the plaintiffs have indicated clearly that they will disseminate the documents if permitted to do so. Because obtaining a modification of the protective order will, as a practical matter, guarantee Public Citizen access to documents in the plaintiffs' possession, Public Citizen has standing to seek the modification

13

See, e.g., In re Alexander Grant & Co. Litigation, 820 F.2d 352, 354-55 (11th Cir.1987); Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir.1986); In re San Juan Star Co., 662 F.2d 108 (1st Cir.1981); In re Halkin, 598 F.2d 176 (D.C. Cir.1979); Mokhiber v. Davis, 537 A.2d 1100, 1109 (D.C. 1988) (collecting cases)

- 858 F.2d.